IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

GERALD LEE HENDRICKSON,

      Plaintiff,

v.                                  Civil Action No. 2:14-cv-11583

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), Brief in Support of Defendant's Decision (ECF No. 11) and Reply by Plaintiff to Defendant's Brief in Support of Defendant's Decision (ECF No. 12).

Background

Gerald Lee Hendrickson (Claimant) protectively applied for Supplemental Security Income under Title XVI of the Social Security Act on September 8, 2010, alleging disability beginning on May 1, 1991 (Tr. at 150, 183).  The claim was denied initially on May 10, 2011 (Tr. at 88), and upon reconsideration on July 8, 2011 (Tr. at 98).  On August 5, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ) stating that he disagreed with the determination made on his claim for Supplemental Security Income benefits because the decision was contrary to the medical evidence and regulations (Tr. at 101-103).  Claimant appeared in person and testified at a hearing in Charleston, West Virginia on September 19, 2012 (Tr. at 24-46).  In the Decision dated September 25, 2012, the ALJ determined the Claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act (Tr. at 64-87).  On November 15, 2012,

1

Claimant requested a review by the Appeals Council because the decision was contrary to the medical evidence and regulations (Tr. at 23).   On January 10, 2014, the Appeals Council received additional evidence from Claimant which was made part of the record (Tr. at 6).   That evidence consisted of Representative brief dated November 15, 2012, admitted as Exhibit B16E. On January 10, 2014, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" (Tr. at 1).   The Appeals Council stated that it considered the reasons for Claimant's disagreement with the decision, but found that the information does not provide a basis for changing the ALJ's decision (Tr. at 1-2).

On March 4, 2014, Claimant brought the present action requesting this Court to review the decision of the defendant and that upon review, it reverse, remand or modify the decision.

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.   *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).   A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."   42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.   20 C.F.R. §§ 404.1520, 416.920 (2013).   If an individual is found "not disabled" at any step, further inquiry is unnecessary.   *Id*. §§ 404.1520(a), 416.920(a).   The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.   *Id*. §§ 404.1520(b), 416.920(b).   If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.   *Id*. §§ 404.1520(c), 416.920(c).   If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.   *Id*. §§

404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id*.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id*. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2013).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date (Tr. at 69). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of osteoarthritis, depressive disorder, anxiety disorder and borderline intellectual functioning. (*Id.*) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any Listings in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 70).  The ALJ then found that Claimant has a residual functional capacity (RFC) to perform medium work, reduced by nonexertional limitations[1] (Tr. at 73).  The ALJ found that Claimant has no past

---

[1] Claimant can frequently climb ramps and stairs but would be limited to only occasional climbing of ladders, ropes, scaffolds, balancing, stooping, kneeling, crouching and crawling.  He must avoid concentrated exposure to extreme cold, vibration and unprotected heights.  He would be limited to performing simple, routine and repetitive tasks with no fast pace, or strict production quotas, and only occasional decision making, occasional changes in the work setting and occasional interaction with coworkers and the public (Tr. at 73).

relevant work (Tr. at 81).   The ALJ concluded that Claimant could perform jobs such as bus person/dining room attendant, cleaning positions and packaging/bagging positions (Tr. at 82). On this basis, Claimant's application was denied (Tr. at 83).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.   *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record, which includes medical records, reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant, born on May 25, 1971, was forty-one years old at the time of the ALJ's decision (Tr. at 150).  He alleged disability due to a learning disability, rheumatoid arthritis and high blood pressure (Tr. at 187).  Claimant attended special education classes and completed the ninth grade (Tr. at 188).  He has prior work experience as a bagger/stocker in a grocery store,

4

cashier at a gas station, dishwasher and laborer.  Claimant asserts that he stopped working on January 31, 1996 (Tr. at 187).  Claimant alleges disability beginning May 1, 1991[2]. (*Id.*)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to comply with 20 C.F.R. § 416.927 in assigning weight to the opinions of a psychological consultative examiner and two examining psychologists (ECF No. 10). Claimant specifically asserts the ALJ gave "considerable weight" to the opinion of a non-examining State agency psychological consultant while rejecting the opinions of two examining professionals, both of whom had performed a psychological consultative examination of Claimant.  Claimant asserts that although the ALJ referenced and discussed a consultative examination report, he failed to evaluate or assign weight to the opinion within the report.

The Medical Record

The court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

On November 23, 2010, Claimant was examined by Sushil Sethi, M.D., a State agency consultative examiner (Tr. at 262-267).  During the evaluation, Claimant told Dr. Sethi that his learning disorder "did not affect [ ] his career" and he had done an "excellent job in various jobs he held" (Tr. at 262).  Claimant stated that he dropped out of school in the ninth grade because he had difficulty getting along with others and did not want to obtain a general education degree. Claimant also reported that he learned how to make pizzas and was very good at it, but left the job because of difficulty standing.  He also worked as a dishwasher, but complained that his boss did not give him enough hours.  Finally, Claimant reported anxiety and depression for which he

---

[2] Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10) asserts in the Statement of Case section on page 2 and Background paragraph on page 3, that Claimant became unable to work as of August 9, 2010.  Claimant cites to pages of the transcript which do not reflect the alleged disability date of August 9, 2010.

previously took Lexapro. (*Id.*)  He stopped taking that medication in 2005 and denied having depression.

Dr. Sethi observed Claimant to have a normal gait and the ability to walk on his tiptoes and heels as well as to squat (Tr. at 263).  Dr. Sethi noted mild tenderness over the Claimant's bilateral knees and a reduced range of motion of the right knee.  (*Id.*)  Likewise, Dr. Sethi noted the Claimant to have generalized tenderness over the lumbar spine at L4, L5 and S1 with some reduced range of motion and positive straight leg testing on the right. (*Id.*).  Dr. Sethi's impressions include a history of arthritis in the feet, knees and back with no specific neuromuscular deficit, hypertension without heart failure and a learning disability in higher math (Tr. at 264).  Dr. Sethi opined the Claimant's ability to work at physical activities may be "moderately affected."  (*Id.*).

Claimant was evaluated by Brenda Tebay, M.A., a State agency psychological consultant on April 12, 2011 (Tr. at 268-272).  Claimant reported feelings of sadness, hopelessness and helplessness and episodes of anger and frustration (Tr. at 271).  Ms. Tebay reported his recent memory to be moderately deficient based on his inability to recall two of four words after a five-minute delay (Tr. at 269-270).  Claimant stated he becomes nervous and anxious and breaks out into cold sweats and feels shaky.  Ms. Tebay administered the Wechsler Adult Intelligence Scale - Fourth Edition (WAIS-IV), which yielded the following results:  Verbal comprehension 70, perceptual reasoning 69, working memory 63, processing speed 76 and full-scale IQ 64 (Tr. at 270-271).  On the Wide Range Achievement Test - Fourth Edition (WRAT-4), the Claimant obtained standards scores:  reading 82, spelling 80 and math computation 72 (Tr. at 271).  Ms. Tebay stated both the WAIS-IV and WRAT-4 scores were considered valid as the Claimant had put forth significant effort and indicated he was working at the borderline range of ability.  (*Id.*).

6

On May 6, 2011, Debra Lilly, Ph.D., completed a psychiatric review technique form and stated Claimant's mental impairments were not severe because they did not result in more than mild limitations of functioning (Tr. at 273, 283).  According to Dr. Lilly, the Claimant's IQ scores, as determined by the WAIS-IV, did not support a borderline diagnosis (Tr. at 285).  Subsequently, on July 7, 2011, Bob Marinelli, Ed.D., completed an updated psychiatric review technique, also finding the Claimant's mental impairments were not severe (Tr. at 297).  While Dr. Lilly had stated the Claimant was only partially credible, Dr. Marinelli stated the Claimant appeared credible (Tr. at 309).

On June 30, 2011, N. Singh, M.D., a State agency non-examining medical consultant, reviewed the file and stated the Claimant retained the ability to engage in a full range of medium work with no additional limitations (Tr. at 288-296).  Dr. Singh further stated that he rejected Dr. Sethi's opinion that the Claimant was moderately limited in physical activities and stated that this opinion was reserved to the Commissioner (Tr. at 294).

On September 6, 2012, Claimant was evaluated by Tony Goudy, Ph.D. (Tr. at 439-445). Dr. Goudy observed the Claimant to have significant psychomotor activity, including fidgeting throughout the assessment and an apparent fine motor tremor of the bilateral hands (Tr. 442). Claimant was noted to be "quite reserved" and made very little eye contact. (*Id.*)  Dr. Goudy noted that the Claimant's affect was generally restricted and that the Claimant began to sob and required several minutes to regain his composure.  (*Id.*)  Dr. Goudy stated the Claimant's responses to questions were not always relevant and described occasions during which the Claimant did not understand questions and required rewording.  (*Id.*)  Dr. Goudy stated Claimant had moderate to marked deficiencies in recent memory, moderate deficiencies in remote memory and marked deficiencies in concentration.  (*Id.*)

7

During Dr. Goudy's evaluation, Claimant had great difficult reading and completing the Beck Depression Inventory - II and Beck Anxiety Inventory. (*Id.*).  As a result, each test was administered orally to the claimant by Dr. Goudy (Tr. at 433).  Both the BDI-II and BAI demonstrated severe symptomology for the Claimant.  (*Id.*)  Dr. Goudy diagnosed the Claimant with depressive disorder NOS and anxiety disorder NOS with a rule out for borderline intellectual functioning by history.  (*Id.*)

Additionally, Dr. Goudy completed a Medical Assessment of Ability to Do Work-Related Activities (Tr. at 446-448).  Dr. Goudy stated that the Claimant had marked limitations in his ability to deal with work stresses; to function independently; to maintain attention/concentration; to understand, remember and carry out complex job instructions; to understand, remember and carry out detailed, but not complex job instructions; and to complete a normal work day and work week without interruptions from psychologically  based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. at 447-448).  Moreover, Dr. Goudy stated the Claimant had moderate limitations in his ability to use judgment, understand, remember and carry out simply job instructions and to behave in an emotionally stable manner.  (*Id.*)

On August 30, 2012, John Atkinson, M.A., a licensed clinical psychologist, conducted a psychological evaluation of the Claimant to assist in a Medicaid eligibility determination (Tr. at 440-458).  Mr. Atkinson administered three subtests of the WAIS-III to assess the Claimant's ability to function in three areas:  Concentration, attention and abstract reasoning (Tr. at 454). The results of these subtests indicated the Claimant was markedly impaired in each of these areas.  (*Id.*)  Mr. Atkinson also administered the Wide Range Achievement Test (WRAT), which produced results that were above the Claimant's education expectancy (Tr. at 455). On the

8

WRAT, the Claimant demonstrated a reading ability at the 6.8 grade level and an arithmetic ability at the 3.9 grade level.   In considering the Claimant's previous and current IQ subtest scores, WRAT scores and history of special education limited to the ninth grade, Mr. Atkinson explained that the Claimant was functioning at the mentally retarded range, but had an aptitude for better academic skills. (*Id.*)   Additionally, during the MSE, Mr. Atkinson observed the Claimant to be vague, hesitant and puzzled and to have frequent misunderstandings of what was said to him by the examiner (Tr. at 454).   Mr. Atkinson noted the Claimant's speech patterns to be dull, tangential, circumstantial and rambling.

Further, Mr. Atkinson stated that Ms. Tebay's assessment that the Claimant had no adaptive deficits is belied by the fact that Claimant was in special education and a borderline IQ (Tr. at 451-452).   Mr. Atkinson stated the Claimant's insight was poor and his delayed memory, concentration, attention and abstract reasoning were markedly impaired (Tr. 454). Mr. Atkinson diagnosed the Claimant with adjustment disorder with anxiety and depressed mood, mild retardation and passive aggressive personality trait disturbance (Tr. at 456).

On September 6, 2012, Tony Goudy, Ph.D., conducted a comprehensive psychological examination and administered psychological testing, including the Beck Depression Inventory and Beck Anxiety Inventory (Tr. at 439-445).   Dr. Goudy observed the Claimant to have significant motor activity and a fine motor tremor of the bilateral hands (Tr. at 442).   The Claimant was described as having a restricted affect and he was noted to make very little eye contact, to have crying episodes with difficulty regaining composure and to not understand questions posed to him without requiring rewording.   (*Id.*)   Dr. Goudy noted the Claimant to have moderate to marked impairment in recent memory, moderately impaired remote memory and markedly impaired concentration.   (*Id.*)   Dr. Goudy explained that the Claimant appeared

confused regarding tasks and that directions had to be repeated to him two additional times. (*Id.*) Dr. Goudy diagnosed the Claimant with depressive disorder NOS, anxiety disorder NOS and a rule out for borderline intellectual functioning (Tr. at 443).

Dr. Goudy also completed a mental residual functional capacity form, in which he noted Claimant to have marked limitations in his ability to deal with work stresses; to function independently, to maintain attention/concentration; to understand, remember and carry out complex job instructions; to understand, remember and carry out detailed but not complex job instructions; and to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. at 447-448). Moreover, Dr. Goudy stated the Claimant would have moderate limitations in his ability to behave in an emotionally stable manner; to use judgment; and to understand, remember and carry out simple job instructions. (*Id.*)

Vocational Expert

At the hearing, the ALJ called upon a vocational expert (VE) to provide information about the number of jobs available for a hypothetical individual with Claimant's vocational background and functional limitations. The VE testified that an individual of Claimant's age, education and work history could perform the representative unskilled occupations of bus person, cleaner and packer/bagger even if limited to simple, routine and repetitive tasks, with no fast-paced/strict production requirements, and only occasional decision-making, occasional changes in the work setting, and occasional interaction with co-workers and the public (Tr. at 41-42).

<u>Discussion</u>

<u>Evaluating a claimant's mental impairments</u>

When evaluating a claimant's mental impairments, the Social Security Administration uses a special sequential analysis outlined at 20 C.F.R. §§ 404.1520a and 416.920a (2013). First, symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his/her decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3). The first three areas are rated on a five-point scale: None, mild, moderate, marked, and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4). A rating of "none" or "mild" in the first three areas, and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3). The ALJ incorporates the findings derived from the analysis:

The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§ 416.920a(e)(2).

In his decision, the ALJ held that the severity of Claimant's mental impairments, considered singly and in combination, do not meet or medically equal the listings of 12.02, 12.04, 12.05 and 12.06[3] (Tr. at 70).  The ALJ made his finding upon consideration of whether the criteria for the listings were satisfied.  To satisfy the criteria of the listings stated above, often referred to as "paragraph B" criteria of listings 12.02, 12.04 and 12.06 or "paragraph D" criteria of listing 12.05, Claimant's mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation means more than moderate but less than extreme.

In activities of daily living and social functioning, the ALJ held that Claimant has mild restriction and mild difficulties (Tr. at 71).  Claimant is able to grocery shop, write a check, watch television, prepare small meals, perform household chores, do yard work, assist his children with homework, care for his children, drive and maintain medical appointments.  Claimant is married, with four children.  He lives with his parents and cares for his children, including taking them to school.  The ALJ held that Claimant has moderate difficulties in concentration, persistence or pace.  Claimant alleged that he is unable to read labels or directions but contradicts himself by reporting that he passed a written driver's examination and previously

---

[3] Listing 12.02 for Organic Mental Disorders; Listing 12.04 is Affective Disorders; Listing 12.05 is Intellectual disability; and 12.06 is Anxiety Related Disorders.

helped his children with homework (Tr. at 39, 227, 453).  The ALJ stated that the limitations identified as criteria of the above stated listings "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process" (Tr. at 71).

Ms. Tebay administered the Wechsler Adult Intelligence Scale- Fourth Edition test (WAIS-IV), in which Claimant received a verbal comprehension IQ score of 70, perceptual reasoning score of 69, working memory score of 63, a processing speed score of 76 and a full-scale IQ score of 64.  Claimant was evaluated using the Wide Range of Achievement Test, which revealed word reading score of 82, spelling score of 80 and a math computation score of 72.  Ms. Tebay determined these scores to be valid and offered a diagnosis of borderline intellectual functioning but asserted that Claimant had no deficits in adaptive living skills.  Ms. Tebay diagnosed Claimant with depressive disorder NOS, anxiety order NOS and borderline intellectual functioning (Tr. at 271).

Weight Afforded Examining Physician Opinion

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  *See* 20 C.F.R. § 416.927(d)(2) (2013).  Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. § 416.927(d)(2) (2005). Under § 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.   Sections 416.927(d)(3), (4), and (5) add the factors of

supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." § 416.927(d)(2).

Under § 416.927(d)(1), more weight generally is given to an examiner than to a non-examiner.  Section 416.927(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources).  The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record."  *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905, 908 (4th Cir. 1974); *Hayes v. Gardener*, 376 F.2d 517, 520-21 (4th Cir. 1967).  Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

The ALJ discussed his holding that the "paragraph B" criteria of listings 12.02, 12.04 and 12.06 or "paragraph D" criteria of listing 12.05, are not met because Claimant does not have a valid verbal, performance or full scale IQ of 59 or less.  Listing 12.05 criteria under "paragraph C" requires Claimant to possess a valid verbal, performance or full scale IQ of 60 through 70 with a significant sub average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  The ALJ

14

concluded that Claimant did not satisfy the "paragraph C" criteria of listing 12.05 (Tr. at 72).  In reaching this conclusion, the ALJ considered and discussed Claimant's psychological consultative evaluation on April 8, 2011, with Ms. Tebay, M.A.. (*Id.*)

In determining the Claimant did not satisfy the criteria of Listing 12.05, The ALJ additionally discussed Claimant's school records, evaluation by Mr. Atkinson, evaluation by Dr. Goudy and Claimant's Wechsler Administrative Adult Intelligence Scale for Children-Revised Edition score from when he was 15 years old (Tr. at 72-73).  The ALJ held the following:

> The file also contains records from Wood County School System, which appears to be one page of a psychological assessment, but there is no author or medical signature and the rest of the report is missing.  This one page indicates that the claimant was 15 years old at the time of testing, and was administered the Wechsler Administrative Adult Intelligence Scale for Children-Revised Edition. He received a verbal IQ score of 70, performance IQ score of 92, and a full-scale IQ score of 80.  The unknown author opined that his current results of intellectual assessment appeared valid, but should not be viewed as a conclusive predictor of future learning potential [ ].  There are no further IQ test scores available for consideration.
>
> Thereafter, on August 30, 2012, John Atkinson, Jr., M.A., evaluated the claimant to determine his eligibility for Medicaid benefits and appeared to offer findings based upon Ms. Tebay's test scores and his clinical interview with the claimant. He opined that the claimant was intellectually functioning at the mental retardation range; however, he noted his academic range was in the dull normal range.  It is noteworthy, that the claimant also appeared to offer himself as more limited to Mr. Atkinson.  For example, he advised that he was unable to read labels or directions, make change, or write a check; however, he admitted that he passed his written driver's license examination and testified at hearing that he had written a check and helped his children with homework [ ].
>
> Subsequently, on September 6, 2012, Tony Goudy, Ph.D., evaluated the claimant at the request of his attorney.  Dr. Goudy did not offer any intelligence testing, but appeared to provide a rule out diagnosis of borderline intellectual functioning, by history, based upon his interview with the claimant [ ].
>
> Accordingly, I find that to satisfy the 12.05(C) criteria, the record must establish mental retardation with a sub average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period with onset prior to attainment of age 22, with a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an

15

additional and significant work-related limitation of function.  I find that the un-authored, undated partial report in Exhibit B1F fails to establish a finding of mental retardation prior to attainment of age 22.  This finding is supported by the unfavorable determination[4] issued on November 7, 1992, which indicated that the claimant received special education and had an intellectual impairment; however, he was still capable of performing entry-level work [ ].

While the claimant does have a physical or mental impairment resulting in work-related limitations, I agree with Ms. Tebay and the prior determination of November 7, 1992, that the record fails to establish deficits in adaptive functioning initially manifested prior to attainment of age 22.  In this regard, the determination of November 7, 1992, indicates the claimant had a girlfriend, used public transportation, enjoyed cooking, driving, watching movies, swimming, motorcycle riding, and he performed odd jobs.  More recently, the claimant has tried to portray himself as more limited; however, he has his driver's license that he obtained through written examination.  He is able to grocery shop, write a check, watch television, watch movies, assist his children, drive, interact with his family, and maintain his hygiene, grooming, and medical appointments [ ].  In consideration, the record fails to establish the "paragraph C" criteria.

Claimant challenges the weight afforded the opinions of the psychological examiners.

Claimant asserts that the ALJ did not consider the opinion of Ms. Tebay and that the ALJ should

have deferred to the opinions of Mr. Atkinson and Dr. Goudy, regardless of other substantial

evidence of record.  Claimant asserts that under 20 C.F.R. § 416.927(b), every medical opinion

received "[r]egardless of its source" will be evaluated using the following factors:

1. The examining relationship, with more weight accorded to a physician who has examined the claimant;
2. The treatment relationship, including the length of treatment of the claimant, the frequency of examination, and the nature and extent of the treatment relationship;
3. The support of the physician's opinion afforded by the medical evidence of record;
4. The consistency of the opinion with the record as a whole;
5. The specialization of the physician, with more weight accorded to a specialist than to a non-specialist; and
6. Other factors, including the amount of understanding of the Commissioner's disability programs and their evidentiary requirements, and the extent to which an acceptable medical source is familiar with the other information in the case record.

---

[4] Claimant previously received disability benefits.  Approximately in 1993, Claimant began receiving SSI and disability insurance benefits as a disabled adult child.  However, in October 1996, the agency terminated Claimant's benefits due to his marriage and excess deemed income (Tr. at 185).

Claimant cites to *Murphy v. Bowen*, in asserting that the Fourth Circuit remanded a claim for disability benefits because the ALJ did not adequately explain why he credited one doctor's opinion over that of another doctor.  *Murphy v. Bowen*, 810 F.2d 433, at 437 (4th Cir. 1987). Claimant argues that the ALJ gave "considerable weight" to the opinion of non-examining State agency psychological consultant, while rejecting the opinions of two examining experts, Dr. Goudy and Mr. Atkinson (ECF No. 10).  Claimant asserts that the ALJ referenced the consultative examination report by Ms. Tebay but failed to evaluate it.  Therefore, the Claimant argues that "the ALJ gave more weight to the opinions of non-examining State agency consultants than he did to three psychological experts, all of whom personally examined the plaintiff."  (*Id.*)

Defendant asserts that it is the duty of the ALJ alone to resolve conflicting medical evidence (ECF No. 11).  Defendant asserts that the only question of appellate review before this Court is whether any reasonable person could possibly have reached the determination of the ALJ.  *See* U.S.C.§§ 405(g), 1383(c).  Defendant asserts that substantial evidence supports the ALJ's determination.

The ALJ afforded "little weight" to the opinion of Mr. Atkinson, a one-time consultative examiner, who did not have an on-going treatment relationship with Claimant.  The ALJ stated that Mr. Atkinson "appeared to offer his opinion based upon the claimant's report of symptoms" and the "examiner did not administer IQ testing, and offered an opinion relying upon prior testing records from another examiner" (Tr. at 81).  Claimant asserts that Mr. Atkins did administer several subtests of the WAIS-III and also administered the WRAT in its entirety (Tr. at 449-458).

Mr. Atkinson's psychological evaluation report lists assessments completed to include: three IQ subtests, but not a complete full IQ testing score, and a Wide Range Achievement Test (Tr. at 449).  A close look at Claimant's wording demonstrates that although Claimant asserts the ALJ mischaracterized Mr. Atkinson's reliance on IQ testing administered by Ms. Tebay, the Claimant admits that his reliance on Ms. Tebay's IQ scores was proper (Tr. at 449-458). Claimant's Brief in Support of Judgment on the Pleadings asserts that "Mr. Atkinson did administer several subtests of the WAIS-III and also administered the WRAT in its entirety. Furthermore, since Ms. Tebay had certified plaintiff's IQ scores as valid, Mr. Atkinson properly relied on these results in his professional assessment of the plaintiff" (ECF No. 10).  In actuality, the ALJ pointed out in his decision that although Mr. Atkinson's opinion[5] relied upon IQ testing by Ms. Tebay, he did not agree with her diagnosis (Tr. at 81).

Claimant asserts that the ALJ did not consider the results of the three subtests administered by Mr. Atkinson reflecting marked impairment in concentration, attention and abstract reasoning.  The ALJ may not have limited Claimant as extremely as Claimant desired, however, he did limit Claimant to simple, routine and repetitive tasks, with no fast-paced/strict production requirements, and only occasional decision-making, occasional changes in the work setting, and occasional interaction with co-workers and the public (Tr. at 42, 73).  Claimant asserts the ALJ failed to evaluate or assign weight to Ms. Tebay's opinion (ECF No. 10).

The ALJ found Ms. Tebay's diagnosis of borderline intellectual functioning to be consistent with the record, over Mr. Atkinson's diagnosis of mental retardation.   Mr. Atkinson was the only examiner to diagnose Claimant with mild mental retardation.   Ms. Tebay's

---

[5] Ms. Tebay's diagnosis of borderline intellectual functioning was based at least partially upon Claimant's lack of deficits of adaptive functioning (Tr. at 73, 271).

diagnosis of borderline intellectual functioning was consistent with the other medical source opinions.

Ms. Tebay did not identify any functional limitations.  Ms. Tebay diagnosed Claimant with borderline intellectual functioning, depressive disorder NOS and anxiety disorder NOS, based upon Claimant's self-reported symptoms (Tr. at 76, 78).  The ALJ's decision held that Claimant had each of these severed impairments (Tr. at 73).  Further, the ALJ included the impairments[6] identified by Ms. Tebay in his residual functional capacity assessment of Claimant and in the hypothetical presented to the VE at the hearing (Tr. at 42, 71-73).

The ALJ relied on Ms. Tebay's psychological consultative evaluation multiple times in the decision.  When Mr. Atkinson relied upon Ms. Tebay's IQ test results, the ALJ discussed the IQ results and agreed with Ms. Tebay's diagnosis based on the IQ results of borderline intellectual functioning (Tr. at 78).  The ALJ also held that he found Claimant's performance during Ms. Tebay's examination "significant" as it was inconsistent with the examinations of Dr. Goudy and Dr. Atkinson (Tr. at 80).  The ALJ relied upon the test scores from the Wood County School and Ms. Tebay in his conclusion.  He found these two tests consistent with a finding of borderline intellectual functioning, which is also what Ms. Tebay diagnosed.  The ALJ concluded that the record in its totality supported his determination that Claimant has the RFC to perform the full range of medium work with the previously stated limitations.  Given all the factors, including the limitations, the VE testified that there are occupations Claimant can perform nationally and regionally (Tr. at 42, 82-83).

The ALJ weighed Mr. Atkinson's opinion under the six factors provided in 20 C.F.R. § 416.927: (1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency,

---

[6] The ALJ limited Claimant to simple, routine and repetitive tasks, with no fast-paced/strict production requirements, and only occasional decision-making, occasional changes in the work setting, and occasional interaction with co-workers and the public.

(5) specialization, and (6) any other factors which tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c). "By negative implication, if a [medical source's] opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F. 3d 585, 590 (4th Cir. 1996).

Although Claimant asserts that the ALJ erred in not upholding Mr. Atkinson's diagnosis that Claimant has mild mental retardation, the ALJ discussed the substantial evidence of record upon which he relied upon to discount Mr. Atkinson's opinion and find that Claimant has severe borderline intellectual functioning. The ALJ points out the contradiction in Mr. Atkinson's opinion by stating in the decision that "He [Mr. Atkinson] opined that the claimant was intellectually functioning at the mental retardation range; however, he noted his academic range was in the dull normal range" (Tr. at 72). In discussing Mr. Atkinson's opinion that Claimant has mild mental retardation, the ALJ pointed out that "interestingly, [Mr. Atkinson] noted that the claimant should be allowed to manage his own benefits if granted, as he had done so in the past" (Tr. at 77). The ALJ also questioned Mr. Atkinson's report because he noted that Claimant portrayed himself differently to Mr. Atkinson than in other consultative examinations (Tr. at 76-77). The ALJ stated that "There are discrepancies and inconsistencies in the record that belie his credibility as a fact witness" (Tr. at 78). For example, the ALJ found it "significant" that Claimant was able to perform serial threes without any difficulty during an examination with Ms. Tebay, but made multiple errors subsequently during the same testing with Mr. Atkinson and Dr. Goudy (Tr. at 80). The ALJ held "I find that this might suggest that the claimant gave less than his best effort during the subsequent exams, thereby lessening the weight afforded to these opinions." (*Id.*)

Additionally, the ALJ discussed Claimant's evaluation by Dr. Goudy.  Dr. Goudy opined Claimant to have mild mental retardation, ruled out diagnosis of borderline intellectual functioning by history, based upon his interview (Tr. at 78).  The ALJ gave Dr. Goudy's opinion "little weight" (Tr. at 77).  The ALJ stated that Dr. Goudy's opinion did not have the benefit of an established treating relationship with Claimant.  (*Id.*)   Further, the ALJ pointed out inconsistencies in Dr. Goudy's opinion.  Dr. Goudy assessed a diagnosis of depressive disorder NOS; anxiety disorder NOS; and a rule out diagnosis of borderline intellectual functioning per history provided by Claimant.  He opined that Claimant's impairments did not meet the criteria of the Listings.  He reported that Claimant would be markedly or seriously limited in his ability to deal with work stresses, function independently, maintain attention and concentration, or complete a normal workday and workweek without interruption from psychologically based symptoms or perform at a consistent pace without an unreasonable number and length or rest periods, based upon his concentration problems and borderline IQ.  (*Id.*)  The ALJ found Dr. Goudy's assessment "interesting" because Dr. Goudy "also opined that the claimant could manage his benefits if awarded."

Ultimately, the role of this Court, on judicial review, is to determine whether the Commissioner's final decision is supported by substantial evidence.   42 § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).   Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."   *Id.*   In applying the substantial evidence standard, the Court should not "reweigh conflicting evidence, making credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F. 3d 585, 589 (4th Cir.

1996)). "When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner]." *Id.*

Standard of Review

Although the ALJ did not find Claimant to have the marked limitations identified by Dr. Goudy, the ALJ's decision shows that he considered Claimant's mental functional limitations in the restrictions he presented to the VE at the hearing and in the limitations he incorporated into Claimant's residual functional capacity (Tr. at 41, 73). Claimant's argument that Defendant failed to comply with 20 C.F.R. 416.927 in giving only "little weight" to Dr. Goudy's opinion is not supported by substantial evidence of the record (ECF No. 10).

Claimant argues that the ALJ failed to find Claimant to have marked limitations identified by Dr. Goudy. As previously discussed regarding the marked limitations identified by Mr. Atkinson, the limitations provided by the ALJ to the VE and held in the Decision include Claimant's credible functional limitations (Tr. at 73). The ALJ considered the record as a whole and limited Claimant to simple, routine and repetitive tasks, with no fast-paced/strict production requirements, and only occasional decision-making, occasional changes in the work setting, and occasional interaction with co-workers and the public.

Conclusion

The ALJ found that Claimant's impairments do not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Substantial evidence supports the determination of the ALJ. The ALJ's decision reflects an adequate consideration of his impairments. The ALJ appropriately weighed the psychological and medical opinions and the evidence of record in its entirety. The ALJ appropriately relied on the evidence as a whole to

determine that Claimant is able to perform jobs in existence in the nation and region. Accordingly, the ALJ denied Claimant's application for SSI under the Social Security Act.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Judgment on the Pleadings, and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Thomas E. Johnston.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   January 29, 2015

Dwane L. Tinsley
United States Magistrate Judge